JANVIER, Judge.
Plaintiff partnership, having leased a commercial building to another partnership of which defendant is the sole surviving member, permitted the temporary use by the said tenant partnership of a part of an adjoining building and now seeks to recover from the surviving member of the lessee partnership rent for the use of the adjoining building for the time during which it was in use.
The defense is that the use of the adjoining building was voluntarily granted by the plaintiff partnership with the understanding that no rent was to be paid.
From a judgment against defendant in the sum of $873.33, he has appealed.
There is no dispute, over the fact that the building was used during the period set forth, that defendant was a member of the partnership which used it, that the other member is dead, and that he, the defendant, is the surviving partner. The only defense is that the said building was to be used without the payment of rent.
Plaintiff partnership owned two adjoining two-story commercial buildings, in New Orleans. They were No. 3501 Gravier Street and No. 3505 Gravier Street. Under a written contract the building numbered 3501 Gravier Street was leased to the commercial partnership, Shirer Casket Company, composed of Irwin N. Shirer and his brother, Ralph F. Shirer. Ralph Shirer has since died.
The lease was dated October 1, 1947, and its term commenced on October 15, 1947. In the building there was a manually operated elevator but the lease contract provided for the installation of a new electric elevator. As originally drafted the contract provided that the lessor would install the electric elevator within 90 days of the date of the lease. However, the lessor *112 partnership, before the lease was signed, fearing that there might be a delay on the part of the elevator contractor, had this provision eliminated and the following substituted: “Order for elevator to be given prior to October lSth, ■ 1947 and installed as soon as possible thereafter.”
As the lessee, Shirer Casket Company, was moving into the building No. 3501 Gravier Street which it had leased, it -became ■ apparent that, because of delay in moving its goods to the second floor there was quite a congestion .on the first floor. Because of this, Robert Werlc, the managing partner of the plaintiff partnership, suggested to one of ihe members of' the lessee partnership that ■ the lessee might' 'temporarily make use of a portion of the first floor of the unleased building No. 3505-Gravier Street., On October 28th or 29th, the lessee moved much of its property into the leased building. A short time later the lessor partnership, feeling that 'the lessee had made use of considerably more space than was contemplated ■ by ■ the' agreement and that it was apparent that théy intended' to use that space for a longer time than had been contemplated, on. November 4, 1947, by registered mail ■ sent to the lessee partnership a letter reading as follows:
- “Messrs. I.->N. Shirer and R. F. Shirer doing business as Shirer Casket Co.,
“739' S. Clark St.,
“New Orleans,'La.
“Gentlemen:
“We are writing you this letter to clarify the present situation and avoid future, misunderstandings.
“On or about the 28th. or 29th of October the writer agreed to let you use a 'limited portion of the building, 3505 Gravier St., adjoining the building you leased from us. This limited use was understood to be for only a few days.
“You have at this writing violated our understanding both in extent of use and time. Not to cause you undue hardship, we will not insist on you vacating the premises, as per our understanding-above, but if-.you continue to occupy the premises we will charge you rent as follows: Two hundred dollars per month, or Ten Dollars per day. We reserve the right tó immediate possession.” , •
“Very truly yours,
“Robt. Werlc & Co., per”
This letter was not answered by the lessee partnership, which, however, continued to use'the first floor'of the adjoining building. On January 23, 1948, finding the unleased building still partially occupied by the lessee of the other building, and fearing that this might interfere with the leasing' of that biiilding, the lessor partnership, by registered mail, called upon the lessee to Vacate the unleased building and made demand for rent for the term during which a portion of that building had been used.' On the next day ’the lessee partnership, by letter, objected to the paying of rent, made several complaints about alleged defécts in the building which was covered by the written léase, arid also complained that the ¿levator had not been installed.
The lessor partnership later brought an, eviction proceeding against the lessee partnership but when the matter was called for trial, an agreement was reached under .which the lessee agreed, to vacate the building-if granted 30 days additional- time; -This delay was granted, and on March 15th the building was vacated. This suit followed.
Plaintiff claims of defendant as the surviving commercial partner rent for the term during which the unleased building was used. The amount claimed is based on a monthly rental of $200 or a-daily rental of $10. As -already stated, the sole defense is that when the lessee-of the building No. 3501 moved into the unleased building No. 3505, it was with the tacit understanding that no rent was to be charged. It was contended that this agreement was made because the lessor did not comply with- its *113 contract concerning the installation of the elevator.
The record shows that the lessor on October 14, 1947, entered into a contract for the installation of the elevator contemplated by the lease. Thus it appears that so far as the installation of the elevator is concerned, the lessor complied with its obligation.
We are not concerned at this time or in this suit with any contention that there were defects in the leased building. One question and only one is before us for determination : Was it contemplated that no rent was to be charged for the use of the un-leased, building? If the defendant at any time intended to contend that there was such an agreement, express or implied, there should have been a protest as soon as his partnership received the letter of November 4, 1947, in which they were notified that they were occupying too much of the space on the first floor of the unleased building, that apparently they intended to occupy that space for too long a time and that, if they continued to use that building, they would be charged rent on the basis set forth in the letter. The continued use of that building without protest and even without answer, cannot be interpreted othérwise than as a tacit acceptance of the terms of that letter.
Article 2293 of our LSA-Civil Code provides that:
“Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, * *
Article 2294 provides that:
“All acts, from which there results an obligation without any' agreement, in the manner expressed in the preceding article, form quasi contracts. * * * »
We considered these articles in Masera v. Rosedale Inn, La.App., 1 So.2d 160, a case in which the defendant, after the expiration of a lease contract, continued to use the property which had formerly been under lease. We held that such action constituted a quasi contract and that the former tenant was liable for the value of the use of the property.
Here the continued use of the building after receipt of the letter of November 4th makes applicable LSA-Civil Code, Article 1816 which, in part, provides that: ■
“Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract.”
In Hearne v. De Generes, La.App., 144 So. 194, the Court of Appeal for the Second Circuit considered a somewhat similar situation. There the defendant was making use of certain property belonging to the plaintiff. The plaintiff, in writing, notified defendant that for the continued use of the property there would be demanded $50 per. month rent and that its continued use would be considered as an acceptance “of the above terms.” The defendant protested but continued to- use the property. The- Court found that' the continued use “inured to defendant’s benefit, and plaintiffs.are therefore entitled to recover under.a quasi contract.”
It is true that in that case the Court affirmed a judgment dismissing plaintiff’s suit as in case of nonsuit, but that judgment of nonsuit resulted from the fact that plaintiff had not shown definitely the “area of the property used by defendant” nor “the length of time it was used * *
Counsel for defendant confidently rely upon the decision of the Court of Appeal for the First Circuit in Lowy v. Bulliard, La.App., 17 So.2d 855, 860, saying in their brief that in that case “the circumstances were considerably stronger than in the present case, and the Court held that there was no implied contract.” That case is complete authority for the contention of plaintiff partnership. The Court held that the *114 letters between the parties evidenced a contract, reversed a decision in favor of defendants and rendered a decree in favor of plaintiffs based on the contract.
Counsel for defendant also quote certain language from that decision to the effect that, while inaction under some circumstances shows assent and creates an obligation, those acts when relied upon “must afford conclusive evidence of such consent.” That is true, but we think that the facts here evidenced conclusively an implied consent to the terms of the letter of November 4th.
Another contention of defendant is that the judgment rendered below was based on the conclusion of the District Judge that, although there had been no contract, recovery by plaintiff was justified on a quantum meruit basis. It is argued that the judgment must be reversed since, according to counsel for defendant, the suit is based on an alleged contract. We cannot be certain as to what were the reasons for the District Judge in deciding as he did, though on the petition itself there is a pen-cilled memorandum reading as follows: “$873.33 4 month 11 days at 200 per mo. on quantum meruit No relationship of landlord & tenant.” This apparently indicates that the Judge felt that the judgment was due on a quantum meruit basis, but we do not find anything in the petition itself which indicates that petitioner was relying entirely on an alleged contract. The petition merely sets forth the facts on which the suit is based and contains a prayer for judgment. Certainly we cannot say from these facts that plaintiff has based its recovery on an alleged contract and therefore cannot recover on a quantum meruit basis.
Our conclusion is that, by failing to protest, defendant partnership and consequently defendant tacitly agreed to the terms of the letter of November 4th, and that there is liability in defendant for rent for the use of the building which was not discontinued until March IS, 1948.
We find no error in the calculation of the District Judge that $873.33 is due.
The judgment appealed from is affirmed at the cost of .appellant.
Affirmed.